## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN MERHOLZ and MELVYN KLEIN, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00557-VAB |
| Plaintiffs, | Date: November 17, 2021 |
| v. | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |
| DANIEL KOOI, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00743-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. | |

[Caption Continued on Next Page]

BARRIOS, and MICHELLE D. WILSON,

                    Defendants,

     -and-

WORLD WRESTLING ENTERTAINMENT, INC.,

               Nominal Defendant.

---

RODNEY NORDSTROM, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC.,

              Plaintiff,

   v.

VINCENT K. MCMAHON, GEORGE A. BARRIOS, MICHELLE D. WILSON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, and PATRICIA A. GOTTESMAN,

              Defendants,

     -and-

WORLD WRESTLING ENTERTAINMENT, INC.,

              Nominal Defendant.

Case No. 3:20-cv-00904-VAB

[Caption Continued on Next Page]

| | |
|---|---|
| RYAN B. MERHOLZ and NICHOLAS JIMENEZ, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, <br><br> Defendants, <br><br> -and- <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Nominal Defendant. | Case No. 3:21-cv-00789-VAB |
| JESSE REZENDES, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON, <br><br> Defendants, <br><br> -and- <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Nominal Defendant | Case No. 3:21-CV-00793-VAB |

[Caption Continued on Next Page]

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00930-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |

**DECLARATION OF BRIAN J. ROBBINS IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF SETTLEMENT**

I, Brian J. Robbins, declare as follows:

1.      I am an attorney duly licensed to practice before the courts of the State of Connecticut.  I am a Partner in the law firm Robbins LLP ("Robbins " or the "Firm"), and my firm represents proposed intervenor Dennis Palkon ("Proposed Intervenor"), by and through his undersigned counsel, in coordination with plaintiffs Ryan Merholz, Melvyn Klein and/or his personal representative or Estate, Nicholas Jimenez, Rodney Nordstrom, Daniel Kooi, City of Pontiac Police and Fire Retirement System, Jesse Rezendes (collectively "Federal Plaintiffs" or "Plaintiffs"), and the Delaware plaintiffs Amer Dastgir, Bernard Leavy, and Robert Lowinger ("Delaware Plaintiffs"), in the above-captioned stockholder derivative actions (the "Actions").[1]

2.      I have personal knowledge of the matters stated herein and, if called upon, I could and would testify competently thereto.

3.      I submit this Declaration in support of Plaintiffs' Motion for Final Approval of Settlement.  The purpose of this Declaration is to set forth the background history of the Actions, the negotiations that led to the Settlement, and the results achieved.  This Declaration further demonstrates that: (i) the Settlement is fair, reasonable, and adequate, and in the best interests of World Wrestling Entertainment, Inc. ("WWE" or the "Company"); and (ii) the agreed-upon amount of attorneys' fees and expenses to be paid to Shareholders' Counsel is fair and reasonable. All capitalized terms that are not otherwise defined shall have the same definitions as set forth in the Stipulation and Agreement of Settlement dated September 17, 2021 ("Stipulation" or "Stip.").[2]

---

[1] Proposed Intervenor, Federal Plaintiffs, and Delaware Plaintiffs, shall be collectively referred to as "Stockholders" or "Stockholder Plaintiffs."

[2] The Stipulation is attached as Exhibit A to the Declaration of William H. Narwold in Support of Shareholders' Unopposed Motion for Preliminary Approval of Settlement filed with the Court on September 20, 2021 (ECF No. 108).

I.    **OVERVIEW**

4.    After extensive good faith and arm's-length negotiations, the parties to the Actions (in coordination with all of the above-referenced Stockholders) have agreed to the Settlement, which fully resolves and settles the Released Claims.  As set forth in the Settlement, WWE has agreed to maintain the Modified Corporate Governance and Oversight Functions (including implementing an extensive Amended and Restated Insider Trading Policy) (the "Governance Reforms") for a period of at least seven (7) years, as set detailed in the attachments to the Settlement and summarized below.  The Governance Reforms confer substantial benefits on WWE and will help prevent future damage to the Company similar to the misconduct alleged in the Actions.[3]

5.    Acting through its independent directors and the DRC, WWE has reviewed the allegations of Proposed Intervenor's complaint, as well as the various other complaints and stockholder demands made on WWE, and the terms of the Settlement.  In a good faith exercise of business judgment, the DRC has determined that the terms of the Settlement (1) are fair, reasonable, and adequate, and in the best interests of the Company and its current stockholders; and (2) shall confer substantial benefits upon WWE and its current stockholders.

6.    For the reasons discussed herein and in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement ("Final Approval Brief"), Plaintiffs submit that the Settlement is a sound resolution of this complex derivative litigation and merits final approval in all respects.

---

[3] After the material substantive terms of the Settlement were determined and agreed upon, Shareholders' Counsel and counsel for Defendants (including the demand review committee ("DRC")) separately negotiated the attorneys' fees and expenses in the amount of $3.65 million to be paid to Stockholder Plaintiffs' counsel in recognition of the substantial benefits conferred on the Company.

## II.      OVERVIEW OF THE LITIGATION

### A.      Factual Summary and Procedural History

7.      Before the Court are stockholder derivative actions brought for the benefit of WWE, against certain of its officers and directors, seeking to remedy alleged claims of breach of fiduciary duties, waste of corporate assets, unjust enrichment, and violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") that occurred between February 7, 2019 and February 7, 2020 (the "Relevant Period") and have caused substantial harm to the Company.

8.      The relevant allegations concern the Defendants' internal reporting and public statements about (1) the Company's dealings with Orbit Showcase Network ("OSN"); (2) WWE's attempts to secure a new media distribution rights deal; and (3) the Company's vital business in the Middle East and North Africa region ("MENA").

9.      Specifically, WWE had been party to two critical agreements in the MENA region. The first agreement was a five-year arrangement with OSN, a Kuwaiti-controlled direct-broadcast satellite provider, that gave OSN exclusive rights of WWE's content for its region.  The second relevant agreement entered WWE into a ten-year partnership with the Ministry of Sports of Saudi Arabia (a Saudi government body previously known as, and referenced herein, as the "General Sports Authority") to host live events in Saudi Arabia.  The OSN deal was set to expire at the end of 2019.

10.      WWE had a turbulent relationship with the General Sports Authority, which was ultimately controlled by the Crown Prince of Saudi Arabia.  As but one example, in 2018, WWE controlling stockholder, Vincent K. McMahon ("V. McMahon"), and the Crown Prince allegedly had an altercation during a WWE event held in Saudi Arabia.  The dispute was partially due to the General Sports Authority's failure to pay amounts due to WWE.  When V. McMahon and WWE's

personnel tried to leave the Kingdom by plane, airport control delayed the airplane for many hours beyond its scheduled departure time.  WWE personnel later expressed that they feared for their safety.

11.     While the plane was ultimately allowed to depart, the dispute lingered.   In November 2018, however, OSN told WWE that their relationship would be terminated, as OSN was closing its sports channels.   The Company and OSN thereafter negotiated a separation agreement, which was signed on December 18, 2018, and became effective as of March 31, 2019.

12.     WWE thus lacked a distribution rights agreement for the crucial and growing MENA market, but did not publicly disclose this information at this time.  The extent to which the WWE board of directors (the "Board") was informed about the termination of this patently material business relationship became a hotly contested point in the derivative litigations that followed.  If the Board was aware of the termination, the failure to disclose the same and the failure to prevent inside trading by senior Company executives could give rise to actionable claims against the Board.  If, on the other hand, the Board had remained ignorant about the termination of the MENA region contracts, a serious governance failure had to be remedied, even if the Board's personal liability would be very difficult (if not unlikely) to approve.

13.     Whether or not the Board was aware of the underlying facts, during the relevant time frame, Defendants allegedly made false and misleading statements (and improperly concealed certain matters) concerning WWE's ability to expand its operations in the MENA region and renew the crucial media rights distribution deal—both of which were necessary for the Company to meet its financial guidance.  As the Company disseminated false and misleading statements beginning at the end of November 2018, and throughout 2019 and into 2020, certain of the Individual Defendants, including defendant V. McMahon, the Company's cofounder, Chairman, and Chief

Executive Officer ("CEO"), sold a substantial amount of his personally held WWE stock . These certain Individual Defendants sold their personally held WWE stock while allegedly aware of the undisclosed and materially negative fact of WWE's loss of its valuable OSN agreement.

**B.    Procedural History**

14.    In April 2020, Plaintiffs first started to file their actions.  On August 28, 2020, Defendants moved to dismiss with prejudice Plaintiffs' state and federal claims under Rule 23.1 (demand futility) and Rule 12(b)(6) (failure to state a claim).

15.    Proposed Intervener made his inspection demand pursuant to Section 220 on May 6, 2020.  Among other things, the demand sought to investigate breaches of fiduciary duty and other violations surrounding the false and misleading statements made by the Company concerning the Company's contracts in the MENA region, as well as insider sales by WWE's fiduciaries.  After significant meeting and conferring regarding the scope of the inspection demand, Proposed Intervenor and WWE entered into a confidentiality agreement covering the documents on September 24, 2020.  The Company started producing documents on October 13, 2020.  WWE produced almost 9,000 pages of documents in response to the inspection demand.  Proposed Intervenor's counsel quickly reviewed the documents as they were produced, knowing that time was of the essence in light of the pending motions to dismiss in the related actions.  After reviewing the Company's internal books and records pursuant to Section 220, on October 23, 2020, Proposed Intervenor then filed a motion to intervene and attached a proposed complaint in intervention.

16.    On November 6, 2020, this Court issued its Ruling and Order on the motions to dismiss.  However, "[b]ecause of the pending motion to intervene filed by Intervenor Plaintiff Dennis Palkon ... the Court [decided to] await resolution of that motion and it underlying claims before deciding whether the dismissal [of the three cases would be] with prejudice," and therefore

binding on and preclusive to all WWE investors, or whether the dismissal could "be remedied by seeking leave to file an amended pleading." *Merholz v. McMahon*, No. 3:20-CV-00557-VAB, 2020 WL 6546007, at *1, *13 (D. Conn. Nov. 6, 2020). Thereafter, Defendants opposed Proposed Intervenor's motion and Proposed Intervenor filed a reply in support of his motion.

       **C.**       **The Parties' Settlement Negotiations**

17.      With the intervention motion fully briefed and a mutual understanding of the arguments for and against the Actions proceeding, Proposed Intervenor and Defendants began settlement negotiations in January 2021. After extensive, arm's-length negotiations, the Parties reached an agreement in principle to settle the Claims, which the Parties memorialized in a Settlement Term Sheet executed on August 16, 2021. Among other things, the Settlement Term Sheet set forth the Parties' agreement to resolve the Claims in exchange for the Modified Corporate Governance and Oversight Functions, as now set forth in the Settlement.

18.      In connection with settlement discussions and negotiations leading to the proposed Settlement set forth in this Stipulation, counsel for the Parties did not discuss the amount of any application by Stockholders' counsel for an award of attorneys' fees and expenses until the Parties negotiated at arm's-length and agreed upon the substantive terms of the Settlement. Upon reaching an agreement on the substantive terms of the Settlement, the Parties then negotiated an award of attorneys' fees and expenses in the amount of $3,650,000.

       **D.**       **Recommendation by Independent Directors and Approval of Settlement by WWE**

19.      In response to certain of the Stockholders' demand to initiate litigation on WWE's behalf, the Board of WWE formed a DRC made up of independent, outside directors. After an independent review of the evidence and analysis of the Parties' negotiations, the DRC recommended to WWE's Board that it should approve the proposed Settlement on the terms and

conditions set forth in this Stipulation because the Settlement is fair, reasonable, and adequate to WWE and its stockholders.  The DRC made its recommendation based on their conclusion that the substantive terms of the Settlement are in the best interests of the Company and its stockholders given the likely costs and rewards of litigation.  Acting through its independent directors, WWE then reviewed the allegations and the Settlement terms, and, in a good faith exercise of business judgment, determined that the terms of the Settlement confer substantial benefits on and are in the best interests of WWE and its stockholders.

### E.    Preliminary Approval

20.    On October 20, 2021, after considering Plaintiffs' preliminary approval briefing, this Court granted preliminary approval of the Settlement, authorized notice of the Settlement to WWE Stockholders, and set December 22, 2021 as the hearing date for final approval of the Settlement.

21.    Notice was timely disseminated to WWE Stockholders in accordance with the Preliminary Approval Order.  The Notice directed that any objections to the Settlement be filed by December 1, 2021.  As of November 17, 2021, the date of the filing of the Final Approval Brief, to Plaintiffs' counsel's knowledge, no WWE stockholder has objected to the Settlement.

## III.    TERMS OF THE SETTLEMENT

22.    The proposed Settlement is a strong resolution to the Actions, which the Parties reached after extensive, arm's-length negotiations.

23.    In consideration for the Settlement and release of all Released Shareholders' Claims against the Released Defendants' Persons, WWE shall implement the Modified Corporate Governance and Oversight Functions as set forth in Exhibit A to the Stipulation for at least a period of seven (7) years.  The Stockholder Plaintiffs tailored the Modified Corporate Governance and

Oversight Functions to address the specific issues raised in the litigation, including the weaknesses that this Court identified when it dismissed the initial actions.

24.     First, these enhancements require WWE management to immediately report to the Board any cancellation or overt threatened beach of any material contract.   Second, these enhancements require the Company's management to provide a report to the Board, on at least a quarterly basis, with the following information: (1) key issues with the performances or potential performances of Material Contracts; (2) any notices of defaults, any payment delays over 30 days, any nonpayment of a Material Contract; and (3) any written requests or agreements to materially modify the payments terms or structure of any Material Contract.

25.     As a result of these reforms, the members of the Board would receive notifications about the issues with the contracts in the MENA region that formed the heart of the Actions.   *See Merholz*, 2020 WL 6546007, at *2-4.   In other words, to the extent the failure to publicly disclose the Company's problems in the MENA region in a timely fashion was due to an internal failure by management to keep the Board apprised, the Settlement cures the precise defect giving rise to the Actions.

26.     In addition, WWE agreed to adopt the "Amended and Restated Insider Trading Policy" (the "Insider Trading Policy").   Again, Stockholder Plaintiffs were able to secure reforms that directly address and attempt to prevent the wrongdoing alleged in these Actions.   Among other things, the Insider Trading Policy prohibits trading by directors, officers, or employees while they are in possession of nonpublic information.   The Insider Trading Policy also prohibits the sharing of such material information, including information about material contracts concerning the television rights to WWE broadcasts.   The Insider Trading Policy requires that the Company's Chief Legal Officer or Deputy General Counsel pre-clear ***each*** transaction concerning the

Company's securities to be executed by any Company director, executive officer, or person who has a title of Executive Vice President or higher.

27.     The Insider Trading Policy explicitly states the compliance officer is "under no obligation to approve a trade or other transaction submitted for pre-clearance and may determine not to permit the trade or other transaction."  This pre-clearance gives the Company an additional level to prevent trading based on insider information, whether done innocently or with malicious purpose.  The Insider Trading Policy then builds on these controls by prohibiting trading during "blackout" periods surrounding earnings results and other event specific material events.  The Insider Trading Policy also details the potential penalties for noncompliance, including: (1) termination; (2) disgorgement of profits; and (3) reimbursements for fines, fees, or expenses that the Company incurs as a result of such trading.

28.     The Settlement requires that WWE maintain the Governance Reforms for a period of at least seven (7) years from the date of implementation.  This is an exceptionally long period of time compared with other settlements of stockholder derivative actions.  The additional time will further ensure that the governance improvements become integral to the Company's culture.

29.     WWE acknowledges that the pendency, prosecution, and settlement of the Actions and the litigation efforts of the Stockholder Plaintiffs and their counsel were the primary factors in the Company's decision to adopt, implement, and maintain the Governance Reforms.  WWE, acting through its independent directors, acknowledges that the Governance Reforms confer a substantial benefit upon the Company.  (*See* Stip. at 7).

## IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

30.     Here, the Parties negotiated the Settlement in good faith and at arm's-length, while relying on experienced counsel, and the Settlement will result in material benefits for nominal

defendant WWE.  Given the complexities of and challenges to the successful prosecution of the Actions, including that the Court has already dismissed three of the derivative actions once, and the uncertainties inherent in stockholder derivative litigation generally, the proposed Settlement eliminates the risk that WWE might not otherwise obtain any benefit or might obtain a lesser benefit.

31.     Settlement at this stage in the litigation will also limit the expense of risky and prolonged litigation, which is in the best interests of all of the Parties, most notably the Company. The adversarial negotiation process and the substantive terms of the Settlement support a finding that it is fair, reasonable, and adequate, as set forth below.

### A.     That the Settlement Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel Also Supports Approval

32.     Here, the Settlement was negotiated between and among experienced and sophisticated counsel and provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery.  The Settlement is the product of extensive arm's-length negotiations by well-informed, skilled, and experienced counsel.

33.     Moreover, exercise of independent business judgment by directors is traditionally afforded significant deference by courts.  Here, the WWE Board, including each of its independent, non-defendant directors, agrees that the Settlement is fair, reasonable, and adequate, and confers substantial benefits upon WWE and its stockholders and has approved the Settlement and each of the Settlement terms as being in the best interests of WWE and its stockholders.  Stip., ¶¶P-Q.

34.     Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement.    Proposed Intervenor's Counsel have tremendous experience in stockholder derivative litigation.  *See* attached hereto Ex.

A; Ex B at Ex. A; Ex. C at Ex. A; Ex. D at Ex. A; Ex. E at Ex. A; Ex. F at Ex. A; Ex. G at Ex. A; Ex. H at Ex. A; Ex. I at Ex. A; Ex. J at Ex. A; Ex. K at Ex. A; Ex. L at Ex. A; Ex. M at Ex. A.  As a result, Plaintiffs' counsel have unique insight into the legal and factual issues presented here, the strengths and weaknesses of the case, the challenges to establishing and recovering damages, and the benefits conferred in the form of corporate governance and internal control reforms. Defendants, in turn, were vigorously represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, and the DRC had its own independent counsel, Simpson Thacher & Bartlett LLP, two of the world's preeminent corporate defense firms.

35.     In addition, Plaintiffs and their counsel acted on an informed basis in negotiating the Settlement.  Plaintiffs, by and through Plaintiffs' counsel, thoroughly considered the facts and law underlying the Actions and have conducted an extensive investigation relating to the claims and the underlying events alleged in the Actions, including: (i) analyzing the Company's filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) analyzing, news reports and other information concerning the underlying matters alleged in the complaint; (iii) analyzing the pleadings and other papers filed in *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc., et al.*, Case No. 1:20-cv-02031-JSR (S.D.N.Y.) (the "Securities Class Action"), including the court's order on the motion to dismiss in that case; (iv) researching the applicable law with respect with the claims asserted in the Actions and the potential defenses thereto; (v) analyzing nonpublic documents produced to certain Stockholders by WWE in response to their Section 220 demands that went directly to the alleged wrongdoing and the Company's internal controls; and (vi) researching the Company's corporate governance structures and developing and negotiating the governance and oversight reform package.

36.     Plaintiffs believe that the claims asserted in the Actions have merit.  Nonetheless, Plaintiffs and Plaintiffs' counsel also recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Actions through trial and appeal. Plaintiffs and Plaintiffs' counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Actions, as well as the difficulties and delays inherent in such litigation.  Plaintiffs and Plaintiffs' counsel are also mindful of the inherent problems of proving the violations asserted in the Actions.  After weighing the risks of continued litigation, Plaintiffs and Plaintiffs' counsel determined that it is in the best interests of WWE and its stockholders that the Actions be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, and that those terms and conditions are fair, reasonable, adequate, and confer substantial benefits upon WWE and WWE Stockholders.

37.     In sum, Plaintiffs, by and through Plaintiffs' counsel, and the Defendants, by and through their counsel, and exercising their business judgment and mindful of their duties to stockholders, have independently considered the Settlement and all agree that it is in the best interest of WWE and its stockholders.  This weighs in favor of final approval of the Settlement.

## B.     The Settlement Confers Substantial Benefits on WWE

38.     Weighed against the substantial risk that continued litigation would yield no benefit while imposing substantial costs on WWE the recovery here is plainly fair, reasonable, and adequate.

39.     The Settlement provides for, *inter alia*, enhancements to Board's corporate governance and oversight functions for WWE.  These enhancements are targeted directly to the alleged wrongdoing here.  For instance, Stockholders secured new reporting requirements that require management to report to the Board concerning the termination or ***threatened*** termination

of material contracts.  Stip., Ex. A.  In addition, management is required to report at least quarterly on any defaults, delays, non-payments, or requests to modify payment terms of any material contracts.  As the Court noted in its order, one of the key difficulties in the Actions was demonstrating Defendants' knowledge of the termination of the OSN contract.  *See, e.g.*, *Merholz*, 2020 WL 6546007, at *8.  Through the Settlement, Proposed Intervenor has ensured, on a going forward basis, that any such termination will reach the Board immediately and prompt proper responsive action, including disclosure when appropriate.

40.     Proposed Intervenor also drafted and the Company agreed to adopt a substantially overhauled insider trading policy.  The revised Insider Trading Policy enshrines best practices concerning director and officer and employee trading in the Company's stock, including: (a) pre-review by the legal department of 10b5-1 trading plans; (b) a prohibition on short selling by Designated Persons; (c) a prohibition on standing and limit orders by Designated Person, except pursuant to ta 10b5-1 trading plan; and (d) a prohibition on Designated Persons purchasing the Company's securities on margin.

41.     The Insider Trading Policy also sets forth what is material insider information, what it means to trade on insider information, and the prohibitions on sharing such material insider information, in easy to understand language for WWE's employees.  The Company is further required to provide the insider trading policy to all directors, officers, and employees, who are then required to certify in writing that they have read and understand the policy.

42.     Taken together, the Governance Reforms will (1) substantially enhance WWE's internal controls and Board oversight; (2) help ensure timely and accurate public statements and legal compliance moving forward; and (3) help prevent a recurrence of the type of alleged failures at issue in this case.  The Settlement is an excellent resolution for WWE and its stockholders, and

the Settlement positions the Company to reap the long-term benefits of strong corporate governance enhancements that will protect and prevent the Company from the type of harm alleged in this case in the future.  WWE and the Individual Defendants acknowledge and agree that the Governance Reforms confer substantial benefits upon WWE and its stockholders.  Stip. at 7.

43.     Importantly, WWE has agreed to maintain all of these governance measures for a minimum of seven (7) years—a substantial amount of time intended to ensure the Governance Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Governance Reforms following the seven-year period.

## C.     The Reaction of Stockholders Further Supports Settlement Approval

44.     Notice was disseminated to WWE stockholders in strict accordance with the procedures set out in the Preliminary Approval Order.  The Notice informed WWE stockholders that the deadline to object to the proposed Settlement is December 1, 2021.  To date, counsel has not heard from any stockholders indicating that they are not satisfied with the Settlement.  This is significant, especially considering that WWE is owned by thousands of stockholders, including a number of sophisticated institutions.  Even where a handful of objections are made, this factor weighs in favor of approval.

## V.     THE NEGOTIATED FEE AND EXPENSE AWARD IS REASONABLE

45.     Pursuant to the "substantial benefit" doctrine, counsel who prosecute a stockholder derivative action that generates substantial benefits for the corporation are entitled to an award of reasonable attorneys' fees and expenses commensurate with the benefits' value and the risks of proceeding on a contingency basis.

46.     As a result of Plaintiffs' counsel's efforts, WWE will enjoy long-term benefits flowing from the Governance Reforms secured by the Settlement.  The Governance Reforms will

help to prevent a recurrence of similar wrongdoing in the future, improve the Company's internal controls, and lay the foundation for restoring investor confidence.  The agreed upon Fee and Expense Award of $3,650,000, which resulted from arm's-length negotiations after the substantive terms of the Settlement were set and in which WWE (or its insurers) had every incentive to push for the smallest fee, is fair and reasonable in relation to the range of value of the Governance Reforms, and the complexity of the matter, the litigation risks, and the time and expenses Plaintiffs' counsel devoted to the case on a fully contingent basis.

A.     **The Negotiated and Agreed-to Fee and Expense Award Should Be Afforded Substantial Weight**

47.     The Court is not being called upon to fashion a fee and expense award.  Rather, it is being asked to determine whether the Fee and Expense Award agreed to by well-represented parties in arm's-length negotiations and approved by the Board falls within the range of reasonableness.  Where the parties reach agreement on the award through separate arm's-length negotiations conducted after the material substantive terms of the settlement are determined, the Court should give "substantial weight" to the negotiated fee amount.

48.     The parties' agreement and the Board's approval of the Fee and Expense Award merit substantial deference.  WWE and its insurers are by all counts sophisticated parties with every incentive to negotiate the lowest reasonable fee for the services rendered by Plaintiffs' counsel.  They were represented in the fee negotiations by skilled and experienced counsel.  The negotiations were conducted at arm's-length after the material substantive terms of the Settlement had been determined.  Unlike in class actions, where the diverging interests of class counsel and absent class members at the fee stage warrant close judicial scrutiny, in this stockholder derivative matter, WWE participated in the negotiations, was represented by counsel, and had every incentive to negotiate the lowest reasonable fee for the services rendered by Plaintiffs' counsel.  Accordingly,

the parties' conclusion that the agreed Fee and Expense Award is fair and reasonable is entitled to substantial deference.

49.     It is also worth noting that WWE insisted that Proposed Intervenor include all potential plaintiffs in all potential jurisdictions in the Settlement.  That demand by WWE meant that any fee award had to include compensation to a wider than usual group of plaintiffs and plaintiffs' counsel.

**B.     The Fee and Expense Amount Is Reasonable in Light of the Benefits Conferred**

50.     Counsel responsible for a corporation's decision to adopt corporate governance enhancements that address the deficiencies alleged to have permitted the wrongdoing and designed to prevent recurrence of the same or similar wrongdoing are entitled to a fee award reflecting the significant economic value conferred.

51.     As discussed in detail in section III *supra*, the Settlement directly addresses the alleged wrongdoing, targeting areas that are at the heart of Plaintiffs' claims: ensuring timely and accurate public disclosures and an adequate system of disclosure, reporting, compliance, and other internal controls.  The Governance Reforms will not only prevent the future occurrence of the alleged wrongdoing, they will improve the Company's policies and procedures for ensuring the accuracy of the Company's public disclosures and legal compliance and will help restore investor confidence.  The cumulative value of the Governance Reforms easily justifies the negotiated Fee and Expense Award.

**C.     The Skill Demonstrated by Plaintiffs' Counsel Supports the Agreed Fee and Expense Award**

52.     Courts reward counsel who bring complex matters to a successful resolution while also serving the interests of efficiency and judicial economy.  This was a complex matter, involving many difficult factual and legal issues.  Plaintiffs' Counsel demonstrated significant skill in

negotiating a strong package of valuable corporate therapeutics despite the real challenges facing Plaintiffs' ability to recover anything for the Company in this derivative litigation, all while avoiding any unnecessary expenditure of resources by WWE, the real party in interest in this litigation.  Defendants were well-represented by pre-eminent corporate defense firms, whose lawyers zealously defended their clients' interests.

      **D.**     **The Contingency Risk Borne by Plaintiffs' Counsel Supports the Agreed Fee and Expense Award**

     53.     The Fee and Expense Award is particularly reasonable in light of Plaintiffs' counsel's risk of non-payment.  Had Plaintiffs' counsel failed to secure a substantial benefit for WWE, they would have recovered nothing for their time and expenses invested in this complex and risky litigation.  As discussed, Plaintiffs' counsel faced tremendous litigation risks in pursuing the Actions.  These risks and the benefits secured for WWE and its stockholders fully justify the approval of the Fee and Expense Amount.

      **E.**     **The Time and Expense Devoted to the Litigation Supports the Agreed Fee and Expense Award**

     54.     Plaintiffs' counsel devoted a total of 3,171.50 hours to the litigation.  This time was spent on tasks that led directly to the recovery, including: (i) analyzing the Company's filings with the SEC; (ii) analyzing, news reports and other information concerning the underlying matters alleged in the complaint; (iii) analyzing the pleadings and other papers filed in the Securities Class Action, including the court's order on the motion to dismiss in that case; (iv) researching the applicable law with respect with the claims asserted in the Actions and the potential defenses thereto; (v) analyzing nonpublic documents produced to Stockholders by WWE in response to their Section 220 demands that went directly to the alleged wrongdoing and the Company's internal controls; and (vi) researching the Company's corporate governance structures and developing and negotiating the governance and oversight reform package.

55.     Robbins' time report was compiled from contemporaneous records made by each biller and then compiled in an electronic database maintained by the Firm.  The hours totals reported here reflect reductions I made in the exercise of billing judgment.  Having reviewed the time records of the lawyers and professionals who billed time to this matter, I can aver that the hours reported and the work they reflect were reasonably necessary to the successful institution, prosecution, and resolution of this litigation.

56.     Robbins' lodestar is based on hourly rates shown below, which are the usual and customary rates charged for each individual in all of our cases.  These rates are based on market rates for lawyers of comparable skill and experience, and have been approved by federal and state courts throughout the nation.

57.     The chart below summarizes the hours, rate, and lodestar of each Robbins professional who worked on this matter, excluding certain staff.  The total number of hours spent on the litigation of the Actions by Robbins is 733.75 hours.  Robbins' total lodestar amount based on the Firm's current rates is $363,718.66.  A breakdown of the lodestar is as follows:

| PROFESSIONAL | POSITION | HOURS | RATE | LODESTAR |
|--------------|----------|-------|------|----------|
| Brian J. Robbins | P | 18.75 | $975.00 | $18,281.25 |
| Gregory Del Gaizo | P | 195.00 | $875.00 | $170,625.00 |
| Mattias X. Montillano* | A | 197.25 | $485.00 | $95,666.25 |
| Trevor S. Locko | A | 14.25 | $485.00 | $6,911.25 |
| Emily R. Bishop | A | 11.75 | $485.00 | $5,698.75 |
| Corporate Research Analysts | Analyst | 173.25 | $171.62** | $29,733.16 |
| Paralegals | Paralegal | 123.50 | $298.00** | $36,803.00 |
| **TOTAL** | | **733.75** | | **$363,718.66** |

Partner (P)     Associate (A)
* Reflects position at time work was performed as such individual no longer works for Robbins LLP.
**Average Hourly Rate

58.     Plaintiffs' counsel incurred a total of $711.35 in expenses performing tasks in connection with the litigation.  These expenses were necessary to effectively prosecute and resolve

the case on favorable terms, would have been billed in non-contingency matters, and are properly reimbursed.  The expenses are broken down as follows:

| CATEGORY | EXPENSE |
|---|---|
| Copies | $116.00 |
| Research & Investigation Costs | $569.72 |
| Filing / Service Fees | $25.63 |
| **TOTAL** | **$711.35** |

59.     The expenses incurred are reflected in the books and records contemporaneously prepared by Robbins.  These books and records are prepared from expense vouchers, invoices, and other billing records, and are an accurate record of the expenses incurred.  As noted, I have reviewed the expenses for which reimbursement is sought and confirmed that they were reasonably necessary for the effective and efficient prosecution and resolution of the litigation and reasonable in amount.  The expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

60.     Robbins' compensation for services rendered and out-of-pocket expenses incurred in this case was and is entirely contingent on the success of the Actions in providing WWE a substantial benefit, and on the Court's approval of the agreed Fee and Expense Award.  None of the attorneys' fees and expenses submitted to this Court has been paid from any source or has been the subject of any prior request or prior award in any litigation or other proceeding.

61.     In total, Plaintiffs' counsel collectively expended 3,171.50 hours in connection with this litigation, for a total lodestar of $2,142,302.16.  The resultant multiplier of 1.72 is well within the range regularly approved by courts in this type of litigation and further demonstrates that the agreed-to Fee and Expense Amount is fair, reasonable, and adequate, and should be approved in full.

### F.    Public Policy Supports the Agreed Fee and Expense Amount

62.    Derivative actions, like the instant case, play an important role in protecting corporations from substantial harm arising from breaches of fiduciary duties and other violations of law by management and directors.  Here, the Actions substantially benefitted WWE and its stockholders.  This would not have been possible had courts in previous cases not properly incentivized skilled and experienced counsel to focus their practice on high-risk stockholder derivative litigation.

## VI.    CONCLUSION

63.    The proposed Settlement is a fair compromise of the issues in dispute.  After weighing the benefits of this Settlement against the uncertainty and risks of continued litigation, the Parties believe that the proposed Settlement is fair, reasonable, and adequate and warrants final approval.  Therefore, I respectfully request that the Court enter the [Proposed] Order and Final Judgment Approving Settlement of Derivative Actions approving the proposed Settlement and dismissing the Actions with prejudice.

64.    Attached hereto are true and correct copies of the following exhibits:

Exhibit A:    Firm Resume of Robbins LLP;

Exhibit B:    Declaration of Mark Lebovitch Filed on Behalf of Bernstein Litowitz Berger & Grossmann LLP in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 15, 2021);

Exhibit C:    Declaration of William H. Narwold Filed on Behalf of Motley Rice LLC in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 12, 2021);

Exhibit D:    Declaration of Jeffrey S. Abraham Filed on Behalf of Robert Lowinger in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 11, 2021);

Exhibit E:    Declaration of P. Bradford deLeeuw in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 12, 2021);

Exhibit F:    Declaration of Travis E. Downs III Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Plaintiffs' Counsel's Motion for Final Approval of Settlement (Nov. 16, 2021);

Exhibit G:    Declaration of Gregory M. Egleston Filed on Behalf of Gainey McKenna & Egleston in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 11, 2021);

Exhibit H:    Declaration of James M. Ficaro Filed on Behalf of The Weiser Law Firm, P.C. in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 9, 2021);

Exhibit I:    Declaration of Joshua H. Grabar Filed on Behalf of Grabar Law Office in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 12, 20211);

Exhibit J:    Declaration of Justin A. Kuehn Filed on Behalf of Moore Kuehn, PLLC in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 5, 2021);

Exhibit K:    Declaration of Gregory Mark Nespole Filed on Behalf of Levi & Korsinsky, LLP in Support of Plaintiffs' Counsel's Unopposed Motion for final Approval of Derivative Settlement (Nov. 10, 2021);

Exhibit L:    Declaration of Seth D. Rigrodsky, Esq. Filed on Behalf of Rigrodsky Law, P.A. in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 12, 2021); and

Exhibit M:    Declaration of Dustin L. Schubert Filed on Behalf of Schubert Jonckheer & Kolbe LLP in Support of Plaintiffs' Counsel's Unopposed Motion for Final Approval of Derivative Settlement (Nov. 11, 2021).

I declare under penalty of perjury that the foregoing representations are true and correct.

Executed this 17th day of November, 2021, at San Diego, California.

*/s/ Brian J. Robbins*
BRIAN J. ROBBINS

1547961

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2021, a copy of foregoing Declaration of Brian J. Robbins in Support of Plaintiffs' Motion for Final Approval of Settlement was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

**ROBBINS LLP**

*/s/ Brian J. Robbins*
Brian J. Robbins (CT 417036)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com